GS HOLISTIC, LLC,

        Plaintiff,

  v.

        Case No. 23-cv-1018-pp

OH WHOLESALE, LLC, *d/b/a 76 Quick Mart Tobacco*
and OSAMA KABASHI,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT AND INJUNCTIVE RELIEF (DKT. NO. 10) AND TERMINATING CASE**

On July 29, 2023, the plaintiff filed a complaint against the defendants alleging trademark counterfeiting and infringement and false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. §1051 *et seq*. Dkt. No. 1. According to the plaintiff, the defendants have sold vaporizers that have the plaintiff's G Pen trademarks affixed to products made with inferior materials and technology. Id. at ¶21. The plaintiff represents that it served defendants OH Wholesale LLC, d/b/a 76 Quick Mart Tobacco, and Osama Kabashi on August 1, 2023, dkt. no 10 at ¶2, dkt. nos. 3-6, and, after the defendants failed to appear, it asked the Clerk of Court to enter default, dkt. no. 10 at ¶3; dkt. no. 8. The clerk entered default on September 18, 2023. The plaintiff has filed a motion for default judgment seeking statutory damages in the amount of $200,000 and $577.84 in costs. Dkt. No. 10.

1

I.  **Entry of Default**

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

Under Federal Rule of Civil Procedure 4(h), plaintiffs may serve a corporate defendant "in the manner prescribed by Rule 4(e)(1)." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) allows the plaintiffs to serve an individual using the methods allowed by state law in the state where the federal district is located. Fed. R. Civ. P. 4(e)(1). Wisconsin allows plaintiffs to serve a limited liability company as follows:

> (a) By personally serving the summons upon an officer, director or managing agent of the corporation or limited liability company either within or without this state. In lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office.
>
> (b) If with reasonable diligence the defendant cannot be served under par. (a), then the summons may be served upon an officer, director or managing agent of the corporation or limited liability company by publication and mailing as provided in sub. (1).
>
> (c) By serving the summons in a manner specified by any other statute upon the defendant or upon an agent authorized by appointment or by law to accept service of the summons for the defendant.

Wis. Stat. §801.11(5)(a)-(c). Under Wisconsin law, an LLC must maintain a registered agent under Wis. Stat. §§183.0115 (2019-20) and 183.0105 (2017-18).

2

In requesting the entry of default, the plaintiff said that it had served OH Wholesale LLC d/b/a 76 Quick Mart Tobacco "via corporate service" and served Osama Kabashi via personal service on the same day (August 1, 2023). Dkt. No. 8 at ¶¶2, 4. The plaintiff filed the affidavit of process server William F. Frahm II from Cream City Process, who averred that he served the authenticated summons and complaint by "delivering to and leaving these documents with Clerk, Yousef Quraan" on August 1, 2023 at 6:40 p.m. at 6416 N. 76th Street, Milwaukee, Wisconsin. The plaintiff filed a separate affidavit from Frahm averring that he personally served Kabashi with a summons and complaint four minutes later at the same address on the same date. Dkt. No. 4.

The Wisconsin Department of Financial Institutions identifies OH Wholesale LLC as a domestic limited liability company that filed a notice of administrative dissolution on January 14, 2024, and was administratively dissolved on March 15, 2023. https://wdfi.org/apps/corpSearch/. The process server initially served the clerk in OH Wholesale with the summons and complaint. It's not clear whether the plaintiff is asserting that the clerk is "someone who is apparently in charge of the office." Wis. Stat. §801.11(5)(a). Regardless, minutes later, the process server served Kabashi—the registered agent, store owner and named defendant—with a summons and complaint in the same location. Dkt. No. 1 at ¶¶21-23; Dkt. Nos. 3; 4. The Wisconsin courts hold that service on the registered agent recognizes an explicit agency agreement and "presents the greatest likelihood that the defendant actually receives notice of the action." <u>Mared Industries, Inc. v. Mansfield,</u> 277 Wis. 2d

3

350, 374 (Wis. 2005). Kabashi, as an individually named defendant or as the registered agent (and the owner) of OH Wholesale, LLC, never has appeared in this case despite having been personally served. The court will proceed to the next step of the analysis.

## II. Motion for Default Judgment (Dkt. No. 7)

After the entry of default, the plaintiff may move for default judgment under Fed. R. Civ. P. 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id. However, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." Id. (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty. Id. Rule 55(b)(2) allows the district court to conduct this inquiry through hearings or referrals, if necessary, to determine the amount of damages. Fed. R. Civ. P. 55(b). Hearings or referrals are unnecessary, however, if the "amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." e360 Insight, 500 F.3d at 602 (quoting Dundee Cement Co. v Howard Pipe & Concrete Prods., Inc., 722 F2d 1319, 1323 (7th Cir. 1983)).

A. <u>Liability</u>

The plaintiff argues that it has established liability on willful trademark infringement under 15 U.S.C. §1114, counterfeiting under 15 U.S.C. §1116 and false designation of origin and unfair competition under 15 U.S.C. §1125(a). Dkt. No. 11 at 2. The plaintiff's brief in support of the motion for default judgment addresses only the infringement and false designation of origin claims. <u>Id.</u>

To succeed on a trademark infringement claim, the plaintiff must show that it owns a valid, protectable trademark and that there is a likelihood of confusion caused by the alleged infringer's use of the disputed mark. <u>Grubhub Inc. v. Relish Labs LLC</u>, 80 F.4th 835, 844 (7th Cir. 2023); <u>see</u> 15 U.S.C. §1114. The elements are similar for a claim under 15 U.S.C. §1125(a). <u>Uncommon, LLC v. Spigen, Inc.</u>, 926 F.3d 409, 419 (7th Cir. 2019). With respect to the likelihood of confusion, the Seventh Circuit has considered the following seven factors: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. <u>Sorensen v. WD-40 Co</u>., 792 F.3d 712, 726 (7th Cir. 2015).

The plaintiff has satisfied the first requirement by establishing that it owns a protectable mark. The plaintiff's "G Pen" trademarks are registered with the U.S. Patent and Trademark Office and owned by the plaintiff. Dkt. No. 10-

11. The plaintiff has established that it continuously has used the G Pen marks in commerce since 2016, in connection with the manufacturing of vaporizing products. Dkt. No. 1 at ¶13.

The plaintiff also has established likelihood of confusion. The plaintiff has established similarity of the marks and the products by filing the affidavit of its CEO, Christopher Folkerts, averring that, on December 27, 2022, "counterfeit products bearing the G Pen Trademarks registered to [the plaintiff] were sold by the Defendant store, facilitated by the Defendant store owner." Dkt. No. 10-3 at ¶6. He avers that the store sold the fake G Pen products for $15.84 when the actual retail sales price is $100. Id. at ¶7. According to Folkerts, the defendant store owner knew the price of the G Pen products, knew the product he was selling was inferior and did not have the plaintiff's consent to sell goods that were not authentic. Id. at ¶¶8, 11.

The plaintiff has established the strength of the mark, the defendants' intent to palm off the product and the confusion created by concurrent use. According to the plaintiff, the G Pen trademarks are distinctive to both the consuming public and the plaintiff's trade, and its products are made from superior materials. Dkt. No. 1 at ¶14. The plaintiff has spent substantial time, money and other resources in developing, advertising and otherwise promoting and protecting its trademarks. Id. at ¶15. The plaintiff has developed customer recognition and awareness of the G Pen brand through the use of point-of-purchase materials and displays, websites, attending trade shows and social media. Id. at ¶16.

The court is satisfied that the plaintiff has established Lanham Act violations under 15 U.S.C. §§ 1114 and 1125(a).

B.  Damages

Having found liability on the trademark infringement and false designation of origin claims, the court next must decide whether the plaintiff may recover actual damages or statutory damages for trademark infringement or counterfeiting. 15 U.S.C. §1117. The plaintiff is pursuing statutory damages. Under § 1117(c)(1), a plaintiff in a case involving the use of a counterfeit mark may recover an award of statutory damages in an amount between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court orders just." 15 U.S.C. § 1117(c)(1). "If the court finds that the use of the counterfeit mark was willful," the ceiling for statutory damages is raised to $2,000,000 per mark per type of goods or services. Id. at § 1117(c)(2). The statute provides no guidance for determining the award amount.

The plaintiff seeks statutory damages in the amount of $200,000, arguing that it "has been damaged by the Defendants' acts because those acts were committed with the intent to trade on the goodwill of the G Pen Marks, cause confusion and deception in the marketplace, and divert potential sales of [the plaintiff's] vaporizer to the Defendant." Dkt. No. 11 at 8. The plaintiff's attorney attached "investigator pictures of the infringing sale." Dkt. No. 10-12. Folkerts, in his affidavit, avers that the sale of counterfeit G Pen products "has almost devastated the marketplace" and that "plaintiff has had trouble entering

7

the marketplace because of the shear [sic] amount of counterfeit G Pen products for sale at cheaper prices and at an inferior quality and technology." Dkt. No. 10-2 at ¶10. He asks the court to award $50,000 in statutory damages for each of the four infringed trademarks. Dkt. No. 10-3 at ¶16. Folkerts acknowledges that actual damages "are nearly impossible to determine, especially in cases of default where the Defendants have not appeared or participated in meaningful discovery." Id. at ¶20. Nevertheless, Folkerts avers that, "if the market had not been impacted by the flood of inferior, mass-produced fake G Pen products, GS HOLISTIC, LLC's 2021 sales would have been approximately $23,250,000." Dkt. No. 10-2 at ¶13.

In seeking a higher statutory amount, the plaintiff argues—as it has in many cases it has filed in this district—that when determining damages in Lanham Act cases, courts "treat default as evidence of willfulness." Dkt. No. 11 at 9 (citing Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010) (collecting cases)). The plaintiff suggests that the court look to an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), for guidance on willfulness but concedes that in the copyright context, some courts have hesitated to "'find willful infringement' based solely on a default judgment." Id. at 10 (citing Malibu Media, LLC v. Funderburg, Case No. 13-cv-2614, 2015 WL 1887754, at *7 (N.D. Ill. Apr. 24, 2015)). The plaintiff argues that it has more evidence of willfulness than the plaintiff in Malibu Media (a pornography-download case) because it has direct evidence "that Defendants are trafficking in counterfeit goods with notorious suppliers selling knockoffs from China." Id.

8

at 10-11. The plaintiff did not, however, cite or provide direct evidence that these defendants are trafficking goods from "notorious" suppliers.

The court is not persuaded that there is a basis to award $200,000 in statutory damages. The plaintiff alleged in the complaint that an investigator entered the defendant store on December 27, 2022, saw an "excess" of vaporizers which displayed the G Pen Trademarks, purchased a Snoop Dogg G Pen with G Pen trademarks affixed to it for a cost of $15.84 and found the G Pen product to be a counterfeit. Dkt. No. 1 at ¶29. The investigator did not file an affidavit; *Folkerts* filed an affidavit explaining, in passive voice, that the vaporizer "was sold" from the defendant store. Dkt. No. 10-3 at ¶6. The plaintiff's attorney filed an affidavit and attached pictures—apparently from the investigator—that appear to be the sales receipt for one vaporizer and the vaporizer in its packaging. Dkt. No. 10-12. The attorney failed to provide any additional explanation for the pictures.

The plaintiff concedes that the defendants "probably have not sold millions of counterfeit products," but argues that the defendant has "engaged in the purchase and sale of counterfeits of at least one unit, and likely traded in more." Dkt. No. 11 at 13. According to the plaintiff, some courts in this circuit have awarded "enormous amounts" for statutory damages in counterfeiting cases involving different products. Id. at 14. The plaintiff also cites cases involving the plaintiff's products, which are pending in California and Florida. Id. at 14-15.

9

Courts in this district have not awarded "enormous" damages. *This* court has awarded the plaintiff no more than $20,000 plus costs in cases involving similar facts. GS Holistic LLC v. Wellness by VCT, LLC, Case No. 23-cv-696, 2023 WL 8283876, *5 (E.D. Wis. Nov. 30, 2023); GS Holistic v. Xtreme Smoke, LLC, Case No. 23-cv-897, 2023 WL 8283852, *5 (E.D. Wis. Nov. 30, 2023); GS Holistic, LLC v. Nara 2020, LLC, Case No. 23-cv-751, 2023 WL 8283849, *5 (E.D. Wis. Nov. 30, 2023); GS Holistic, LLC v. IFR Investment, Inc., Case No. 23-cv-901, 2023 WL 8283853, *6 (E.D. Wis. Nov. 30, 2023); GS Holistic, LLC v. Sphinx, Inc., Case No. 23-cv-785, 2023 WL 8283850, *5 (E.D. Wis. Nov. 30, 2023); GS Holistic, LLC v. Brew City Smokes, LLC, Case No. 23-cv-745, 2023 WL 8283658, *5 (E.D. Wis. Nov. 30, 2023); and GS Holistic, LLC v. Silver Haze, LLC, Case No. 23-cv-778, 2023 WL 8283662, *6 (E.D. Wis. Nov. 30, 2023).

In GS Holistic, LLC v. Smoke World, Inc., Judge Adelman rejected the plaintiff's request for $150,000 as "excessive" given that the defendants were not running a widespread counterfeiting operation. Smoke World, Case No. 23-cv-703, Dkt. No. 11 at 4 (E.D. Wis. Nov. 9, 2023). He recounted that the investigator had purchased a counterfeit product for about $300, that the genuine article sells for $600 and that the defendants could not have made more than $300 in profits on the sale. Id. Judge Adelman determined that a $20,000 award would be a significant sum for a company that operates a small retail store, would have a deterrent effect and reasonably approximated the actual harm caused by the infringement (multiple sales of approximately fifty counterfeit products). Id., Dkt. No. 10 at 4; see also GS Holistic v. King Louis

10

Vape and Smoke LLC et al., Case No. 23-cv-747-LA, Dkt. No. 11 at 4 (E.D. Wis. Nov. 9, 2023); GS Holistic, LLC v. KHM LLC d/b/a Luxury Cigars and Hasan M. Ali, Case No. 23-cv-749-LA, Dkt. No. 12 at 4 (E.D. Wis. Nov. 9, 2023).

Judge Stadtmueller reduced the plaintiff's request for statutory damages to $25,000 per mark. GS Holistic, LLC v. Smoke 414 LLC, Case No. 23-cv-743, Dkt. No. 10 at 16 (E.D. Wis. Nov. 28, 2023); GS Holistic v. Cigarworld Inc., Case No. 23-cv-701, Dkt. No. 11 at 16 (E.D. Wis. Nov. 28, 2023); GS Holistic LLC v. Lava Smoke Shop LLC, Case No. 23-cv-748, Dkt. No. 11 at 16 (E.D. Wis. Nov. 28, 2023); GS Holistic LLC v. S&S 2021 LLC, Case No. 23-cv-697, Dkt. No. 11 at 16 (E.D. Wis. Nov. 28, 2023); GS Holistic, LLC v. MKE Vapor, Inc., Case No. 23-cv-750, Dkt. No. 12 at 16 (E.D. Wis. Nov. 28, 2023). In each of these cases, Judge Stadtmueller observed that the specific allegations addressing willfulness were "sparse and vague." See Smoke 414, Dkt. No. 10 at 11.

Judge Ludwig found the plaintiff's allegations about lost sales "speculative," and determined that the plaintiff had not tied the defendants to a massive counterfeiting operation such that the plaintiff could justify a $150,000 statutory damages award. GS Holistic LLC v. Vilet Z LLC, Case No. 23-cv-781, 2024 WL 113779, *5 (E.D. Wis. Jan. 10, 2024). Judge Ludwig awarded the plaintiff $10,000 plus costs in the amount of $497. Id.

This court will award statutory damages of $20,000, consistent with the court's decisions in other cases filed by the plaintiff. The amount of the award lies in the court's discretion and is within the range provided by the statute.

11

The investigator made a single purchase from the defendant's retail store. Although the investigator saw an "excess" of vaporizers, the court doesn't know what the investigator means by "excess." The court understands that the defendants chose not to appear, they likely knew they were not authorized dealers of the plaintiff's products, the plaintiff has suffered losses because of the sale of counterfeit goods and the infringing product bore a G Pen mark. But the investigator paid $15.84 (with tax) for an infuser that would otherwise sell for $100 (a difference of $84.16). There is no evidence that these defendants played a role in massive counterfeiting operations. Based on the limited information available to the court, the statutory award of $20,000 will serve the purpose of having a deterrent effect but more closely approximates the amount of the harm.

C.  Injunctive Relief

The Lanham Act permits injunctive relief on a finding of infringement. 15 U.S.C. §1116(a). To obtain a permanent injunction, the plaintiff must show (1) irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that a remedy in equity is warranted in light of the balance of hardships; and (4) that the public interest would not be harmed by a permanent injunction. LAJIM, LLC v. Gen. Elec. Co., 917 F.3d 933, 944 (7th Cir. 2019) (citing eBay v. MercExchange, LLC, 547 U.S. 388, 391 (2006)). A plaintiff with a protectable mark seeking an injunction is entitled to a rebuttable presumption of irreparable harm upon a finding of a violation under the Lanham Act. 15 U.S.C. § 1116(a).

12

The court has found irreparable injury based on the sale of a counterfeit good bearing the plaintiff's marks. There is no adequate remedy at law aside from the award of statutory damages because there is no effective way to calculate the plaintiff's damages. See Krispy Krunchy Foods LLC v. Silco LLC, Case No. 20-cv-293, 2023 WL 2465881,*6 (E.D. Wis. Mar. 10, 2023). Also, there is a rebuttable presumption of irreparable harm under 15 U.S.C. §1116(a) and the defendants have failed to offer any rebuttal (or appear at all). The plaintiff has established that the defendants are selling inferior products at the expense of the plaintiff's profits, goodwill and reputation. The public interest is served by enforcing the plaintiff's trademarks and minimizing public confusion.

By separate order, the court will issue a permanent injunction prohibiting the defendants from selling or offering to sell counterfeit G Pen products. The court will modify the language proposed on page 17 of the plaintiff's brief because the plaintiff refers to its "Stüdenglass Marks" rather than the G Pen trademarks. Dkt. No. 11 at 17.

D.   Costs

The Lanham Act allows a plaintiff to recover the costs of the case. 15 U.S.C. § 1117(a). The plaintiff seeks costs in the amount of $577.84. In the affidavit filed in support of the motion, plaintiff's attorney represents that the costs included the filing fee ($402), the process server fee ($95) and investigation fees ($80.84). Dkt. No. 10-1 at ¶6. The court will not award the investigation fees. The court shares the concerns expressed by Judge Adelman

13

that the plaintiff has not cited—and the court has not located—authority to award the costs of the investigation. See Smoke World, Case No. 23-703, Dkt. No. 10 at 5-6; see also Wahl v. Carrier Mfg. Co., Inc., 511 F.2d 209, 217 (7th Cir. 1975) (expenses incurred in making investigations "are not recoverable as costs").

### III. CONCLUSION

The court **GRANTS** the plaintiff's motion for default judgment. Dkt. No. 10.

The court **ORDERS** that the clerk must enter default judgment in favor of the plaintiff and against the defendants, jointly and severally, in the amount of $20,000 plus costs in the amount of $497.

The court **GRANTS** the plaintiff's request for injunctive relief. Dkt. No. 11. The court will issue a separate injunction in compliance with Federal Rule of Civil Procedure 65(d).

The court **ORDERS** this case is terminated.

Dated in Milwaukee, Wisconsin this 30th day of April, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**